882 So.2d 838 (2003)
Ex parte HORTON FAMILY HOUSING, INC., a corporation, and Kim Temple.
(In re Sabrina Burton and John Burton
v.
Horton Family Housing, Inc., a corporation, and Kim Temple).
1021679.
Supreme Court of Alabama.
November 21, 2003.
*839 H.E. Nix, Jr., and M. Todd Russell of Nix, Holtsford, Gilliland, Higgins & Hitson, P.C., Montgomery, for petitioners.
G. Houston Howard II of Howard, Dunn, Howard & Howard, Wetumpka, for respondents.
HOUSTON, Justice.
Horton Family Housing, Inc., and Kim Temple, the defendants in an action pending in the Elmore Circuit Court, petition for a writ of mandamus directing that court 1) to vacate its order allowing discovery, 2) to issue a protective order preventing plaintiffs Sabrina Burton and John Burton from engaging in such discovery, and 3) to grant Horton's motion to compel arbitration. We deny the petition.

I. Facts
In December 2001, the Burtons ordered a manufactured home from Horton. Mrs. Burton appears to have handled all aspects of the transaction. The Burtons specially ordered linoleum for the bedroom floor and a large Palladian window. Horton processed special order homes such as the Burtons' only after financing was approved through GreenPoint Credit, L.L.C., a financing company. On December 12, 2001, GreenPoint Credit informed Horton that it had approved the financing for the Burtons' home, stating on the application Mrs. Burton had submitted: "all conditions have been met."[1] Kim Temple, an employee of Horton, then informed Mrs. Burton that her credit application had been approved.
Mrs. Burton signed three documents to complete the transaction: a buyer's order form, an installment sales contract/security agreement, and a separate arbitration agreement. The separate arbitration agreement stated, in pertinent part:
"Buyer and Seller agree, covenant and consent that any and all controversies or claims arising out of or in any way relating to the sale of the said mobile home and the negotiations leading up to the sale, whether in the nature of covenant, warranty, misrepresentation, rescission, breach of contract, or other tort, shall be settled solely by binding arbitration in accordance with the provisions of the Federal Arbitration Act....
"Buyer and Seller agree that [t]his agreement shall cover any and all disputes, *840 claims or controversies between them, including but not limited to warranty claims[,] service or repair disputes, and all other claims arising out of or in any way related to the sale and service of the said mobile home."
The installment sales contract/security agreement also contained an arbitration provision; that provision mostly reiterated the terms of the separate arbitration agreement. However, it contained the following language, which did not appear in the separate arbitration agreement: "Any controversy concerning whether an issue is arbitrable shall be determined by the arbitrator(s)."
When the manufactured home was complete, Horton delivered it to the Burtons' property. However, Horton was unable to place the home on its designated site because the property had not been adequately prepared.[2] After its unsuccessful attempt at delivery, Horton returned the home to its place of business.
At some point after delivery of the manufactured home was attempted, GreenPoint Credit informed both parties that it could not confirm Mrs. Burton's income and thus that it was withdrawing its approval of the loan.
The Burtons filed this action in the Elmore Circuit Court claiming fraudulent misrepresentation, fraud by forgery, failure to disclose, conversion, negligence, wantonness, negligent delivery and removal, and wanton delivery and removal. Horton and Temple filed an answer and a motion to dismiss, or, alternatively, to compel arbitration. The Burtons immediately filed notice of their intent to serve a subpoena on GreenPoint Credit and noticed the taking of the deposition of Horton's president, Trey Horton. At this point, Horton and Temple filed a motion for a protective order to halt discovery, which the trial court initially denied on June 25, 2003. Horton and Temple subsequently filed this petition for a writ of mandamus. On July 9, the day Horton and Temple filed this petition, the trial court issued a protective order "as to issues beyond the substance of the existence of the sales/financing agreement."

II. Standard of Review
"Disputes regarding discovery matters are an appropriate basis for a petition for a writ of mandamus." Ex parte Anderson, 789 So.2d 190, 194 (Ala.2000). However, the party seeking a writ of mandamus in a discovery dispute must properly move for a protective order under Rule 26(c), Ala. R. Civ. P. Ex parte Horton Homes, Inc., 774 So.2d 536, 539 (Ala.2000); see generally Ex parte Reynolds Metals Co., 710 So.2d 897 (Ala.1998). In this case, Horton and Temple timely filed their motion for a protective order 11 days after the Burtons filed their first notice relating to discovery.
"`Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.'"
Ex parte Perfection Siding, Inc., 882 So.2d 307, 309-10 (Ala.2003) (quoting Ex parte Integon Corp., 672 So.2d 497, 499 (Ala. *841 1995)). The ultimate question in reviewing a petition for a writ of mandamus regarding a trial court's ruling on a discovery matter is whether the trial court exceeded its discretion. Ex parte Horton Homes, Inc., 774 So.2d at 539.

III. Analysis
A trial court's duty in ruling on a motion to compel arbitration is analogous to its duty in ruling on a motion for a summary judgment. Ex parte Greenstreet, Inc., 806 So.2d 1203, 1207 (Ala.2001). The party seeking to compel arbitration has the burden of producing evidence to establish a prima facie showing that an agreement to arbitrate exists in a "contract evidencing a transaction involving commerce." 9 U.S.C. § 2; see also Ex parte Greenstreet, 806 So.2d at 1209. Once the moving party makes that showing, the burden of persuasion shifts to the nonmovant to present "substantial evidence" of some defense to arbitration. Ex parte Greenstreet, 806 So.2d at 1209. In a summary-judgment proceeding, the nonmovant may be permitted to discover evidence in order to properly oppose the motion; in arbitration, however, "discovery is the exception and not the norm." 806 So.2d at 1207.
Though rare in a proceeding on a motion to compel arbitration, discovery is allowed in certain circumstances. We have fashioned an exception where substantial evidence to defeat the motion may exist, but the opposing party is "unable or virtually unable to obtain the necessary evidence except through discovery." Ex parte Greenstreet, 806 So.2d at 1208. The party opposing the motion must present a "factually based predicate" that establishes what the party knows, what it expects to discover, and why that information matters. 806 So.2d at 1209.
In the case before us, the Burtons allege that financing was a condition precedent to the formation of the entire contract between Horton and them. Consequently, they argue, GreenPoint Credit never approved the financing, the condition precedent was not met, and the contract never came into existence. See Ex parte Cobb, 781 So.2d 208, 210-11 (Ala.2000)(approved financing was a condition precedent to the contract formation, and its nonoccurrence yielded no contract and thus no arbitration clause); Ex parte Payne, 741 So.2d 398, 403 (Ala.1999)(same). If no contract existed, no arbitration agreement existed.
Horton and Temple counter by arguing that GreenPoint Credit did approve the financing, that the condition precedent was fulfilled, and that the contract did come into existence. Horton says it did not complete delivery of the home because it could not cross a culvert to place the manufactured home, not because financing was denied. Horton and Temple argue that the contract was validly formed and that the arbitration provisions are enforceable. See Celtic Life Ins. Co. v. McLendon, 814 So.2d 222, 225-26 & n. 2 (Ala.2001) (distinguishing that case from Cobb and Payne because in Celtic Life the formation of the contract was not at issue).
This petition centers on whether "all conditions [were] met," as the application for financing states. If so, the contract existed and the circuit court should have granted the motion to compel arbitration. But if the approval of the financing was "subject to [GreenPoint Credit's] verification of the information provided," as indicated at the bottom of the financing application, it is possible that the condition precedent was not met and that, therefore, the contract never came into existence.
Whether GreenPoint Credit extended financing to the Burtons is central to this dispute, and the Burtons are entitled to conduct limited discovery on matters related *842 to the financing. On June 25, the trial judge denied Horton and Temple's motion for a protective order, which would have placed some limit on discovery. In so deciding, the judge exceeded his discretion and, if the order had stood, would have committed reversible error. However, on July 9, the judge issued a protective order which we read as appropriately limiting the Burtons' discovery to whether financing had been approved; if it had been approved, when; and if and when financing was later withdrawn. If the court permits discovery beyond those bounds, Horton and Temple are free to again petition this Court for mandamus relief. However, based on the above, we deny the petition as to this issue.
While at this stage it is not proper for this Court to rule on Horton and Temple's motion to compel arbitration (as they request), we order the judge to set a hearing date for the motion to compel arbitration and, once the Burtons have engaged in the limited discovery allowed above, to rule on that motion. Thus we deny the petition as to this issue.
PETITION DENIED.
SEE, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
JOHNSTONE, J., concurs specially.
JOHNSTONE, Justice (concurring specially).
I concur in all material aspects of the main opinion. My only reservation is that I disagree with the implication of footnote 2 that a brief can constitute either pleadings (allegations) or proof. However, this detail of the main opinion makes no difference to either the rationale or the judgment.
NOTES
[1] However, the following boilerplate language appeared at the bottom of the application: "The stated terms of credit approval are subject to our verification of the information provided by you."
[2] The record, particularly a July 19 affidavit of Trey Horton, the president of Horton, simply alleges that "Sabrina Burton did not adequately prepare the property for the manufactured home to be moved across it to the home site." This allegation is vague; however, the briefs more specifically allege that there was a culvert on the property that could not be traversed with the manufactured home.